IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY MARVIN SANTOS,

   Petitioner,       No. CIV S-09-3143 KJM CHS

 vs.

MATTHEW CATE, et al.,

   Respondent.  **FINDINGS AND RECOMMENDATIONS**

_____/

## I.  INTRODUCTION

   Petitioner Timothy Santos, a state prisoner, proceeds pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate prison term of thirty six years to life for convictions sustained in the Shasta County Superior Court, case number SF092448A.

## II.  BACKGROUND

   The California Court of Appeal, Third Appellate District, summarized the facts of petitioner's offenses on direct review.  These facts have not been rebutted with clear and convincing evidence and therefore are presumed correct.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).

/////

1

On a sunny September morning in 2003, Shasta County Sheriff's Deputy Christopher McQuillan was parked in a marked police car observing traffic. He testified he saw a red truck approaching and noticed a crack in the center of the windshield running from the top to the bottom. He also saw smaller cracks running horizontally. He stopped the driver of the truck because he believed that the crack impaired the driver's view. He testified that in his experience, cracks in a windshield reflect the light toward the driver and can blind him.

Defendant and his passenger appeared nervous, almost paranoid. Defendant told the deputy his registration had blown out of the vehicle. McQuillan requested back-up for his own safety. After another deputy arrived, his dog "alerted" on the truck and the deputies noticed a strong chemical smell. In the truck, the deputies found ephedrine, hydrochloric acid with ephedrine inside it, red phosphorous, iodine, marijuana, and an open container of alcohol. Based on his training and experience and the presence of these chemicals, McQuillan believed the truck was a rolling methamphetamine laboratory. He requested assistance from the Shasta Interagency Narcotic Task Force (SINTF).

SINTF Agent David Kent testified that defendant told him the chemicals were used for manufacturing methamphetamine, claimed they belonged to a friend, but admitted that he had arranged to make methamphetamine for himself and the friend. Boasting that he knew more about chemistry than all the agents at the scene, he claimed he had a patent that would speed up the process of making methamphetamine. He also told the agent he had been manufacturing it at his house in Shasta Lake City. The agents thereafter seized a treasure trove of chemicals and drug paraphernalia at the house.

Defendant's then girlfriend lived at the house with her three children, ages 8, 10, and 12. She told the SINTF agent she was upset because defendant had been "cooking" methamphetamine in their kitchen and in the bathroom. Later she recanted those statements.

Defendant testified at trial. Although he admitted he had been addicted to methamphetamine since he was 14 or 15 years old, he claimed he ran a lucrative business and supported his family. He testified he had not admitted to the officers he manufactured methamphetamine and insisted he told the officers the chemicals belonged to someone else. He explained that he used the chemicals found in his house to clean the expensive paintbrushes he used to apply finishes to decks. He claimed that Deputy McQuillan initially told him he was pulled over for speeding and then changed his justification to the windshield. Defendant testified there was "a small chip" in the windshield.

The officers impounded defendant's vehicle. The towing company operator also testified there was a crack in the middle of the windshield, but he opined that the crack did not obstruct the driver's vision. A defense investigator took pictures of the truck from between 75 and 90 feet away because he could not come inside the wrecking yard where the truck was stored. These pictures, as well as those taken by the police, were of poor quality. A crack in the windshield was not discernible in the photos.

The operator of the tow truck company sold the truck without giving defendant or his family the proper notice. The truck had not been located at the time of the first suppression hearing. When it was located about three years later, the defense made a second suppression motion based on what in its view constituted new evidence. The new owner of the truck would have testified that the windshield had a crack in it extending from top to bottom midline, but it did not obstruct his vision.

The defense also offered evidence that Deputy McQuillan, in a case many years earlier, had failed to include in his report that a defendant made incriminating statements after he invoked his *Miranda* rights. Defendant argues that McQuillan's credibility was at issue. He also points out that McQuillan had prior information that a red truck matching the impounded truck's description was possibly involved in sales of narcotics.

*People v. Santos*, No. C056347, 2008 WL 4175094, at 1-2 (Cal. App. 3 Dist., 2008).

Petitioner was convicted by jury of possession of a substance with intent to manufacture methamphetamine, conspiracy to manufacture methamphetamine, possession of a smoking device, possession of a hypodermic needle without a permit, possession of marijuana while driving, and child endangerment.  The court found various enhancements for prior convictions and prison terms to be true.  An aggregate sentence of 36 years to life was imposed.

The California Court of Appeal, Third District, affirmed the judgment and sentence.  A petition for review to the California Supreme Court was denied.

### III.  GROUNDS FOR RELIEF

The federal petition presents four grounds for relief.  For purposes of this opinion, grounds one and three will be addressed together in a single discussion.  Petitioner claims:

Ground One: The trial court erred in violation of the Fourth Amendment when it denied his motion to suppress evidence of the items seized from the truck;

1    Ground Two: The prosecution failed to preserve exculpatory evidence in violation of due

2    process and the rule of *California v. Trombetta*, 467 U.S. 479, 485 (1984);

3    Ground Three: The trial court did not give petitioner a full and fair hearing on his motion

4    to suppress; and

5    Ground Four: The trial court's instruction that jury unanimity was not required on the

6    conspiracy count violated due process.

7    IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

8    An application for writ of habeas corpus by a person in custody under judgment of

9    a state court can be granted only for violations of the Constitution or laws of the United States.

10    28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

11    *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

12    This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

13    the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

14    U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

15    AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

16    state court proceedings unless the state court's adjudication of the claim:

17    (1) resulted in a decision that was contrary to, or involved an
      unreasonable application of, clearly established Federal law, as
18    determined by the Supreme Court of the United States; or

19    (2) resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in the
20    State court proceeding.

21    28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

22    *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

23    This court looks to the last reasoned state court decision in determining whether the law applied

24    to a particular claim by the state courts was contrary to the law set forth in the cases of the United

25    States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v.*

26    *Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919.  It is the habeas corpus

4

1   petitioner's burden to show the state court's decision was either contrary to or an unreasonable

2   application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).

3                                   V.  DISCUSSION

4           A.      Grounds One and Three:  Motion to Suppress

5           The defense moved to suppress evidence of the items found in the truck pursuant

6   to section 1538.5 of the California Penal Code.  Petitioner claimed that police did not have a

7   reasonable suspicion to stop him for driving with a cracked windshield, and thus that seizure of

8   the items from the truck and their subsequent admission into evidence violated his rights under

9   the Fourth Amendment.

10          On June 28, 2004, a pre-trial hearing was held on the motion to suppress.

11  Testimony was received from the officer who initiated the traffic stop, the tow truck company

12  owner who stored and eventually sold the vehicle, two private investigators for the defense who

13  photographed the truck, and a detective from the Shasta County police department who also

14  testified about photographs of the truck.  Judge Smith denied the motion to suppress, indicating

15  he found the police officer's testimony credible that there was a crack on petitioner's windshield

16  and therefore that probable cause existed to detain him.

17          On October 5, 2004, still prior to trial, the defense renewed the motion to

18  suppress.  Judge Curle denied the request for another hearing and denied the renewed motion to

19  suppress on October 25, 2004.

20          On February 5, 2007, the defense filed a motion in limine for the purpose of

21  renewing the motion to suppress.  The defense asserted there was "new evidence" not available at

22  the time of the June 28, 2004 hearing: the vehicle had been located (and the crack had expanded).

23  Judge Baker, the trial judge, heard the motion in limine on February 6, 2007 and determined that

24  the initial motion to suppress was sufficiently heard.  Judge Baker indicated his preference for the

25  testimonial evidence already presented over any potential "new evidence" pertaining to the actual

26  vehicle since the crack had substantially changed by the time the vehicle was located and re-

1  examined.

2        Petitioner claims that the trial court's decision not to suppress the evidence

3  violated his rights under the Fourth Amendment.  The Fourth Amendment protects the right to be

4  free from unreasonable searches and seizures.  [W]here the State has provided an opportunity for

5  full and fair litigation of a Fourth Amendment claim," however, "a state prisoner may not be

6  granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

7  search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see*

8  *also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is

9  whether petitioner had the opportunity to litigate his claim...").

10        Here, petitioner clearly had the opportunity to litigate his Fourth Amendment

11  claim in state court.  As discussed, he was heard on the issue multiple times.  Nevertheless, he

12  contends he was denied a full and fair hearing on the matter since his request to renew the motion

13  and present "new evidence" was denied.

14        The argument is without merit.  The matter was raised in multiple pre-trial

15  motions.  The issue was thoroughly briefed at the trial level and the court held a hearing at which

16  the defense was allowed to present evidence and examine witnesses.  The trial court made a

17  factual finding that was supported by evidence in the record and upheld on direct review by the

18  state appellate court.  The claims presented in the petition are identical to those considered and

19  squarely rejected by the state courts.  Under these circumstances, petitioner had a full and fair

20  opportunity to litigate his Fourth Amendment claim in state court.  *See Abell v. Raines*, 640 F.2d

21  1085, 1088 (9th Cir. 1981).  No relief is available for grounds one or three.

22        B.     Ground Two:  Alleged Failure to Preserve Evidence

23        Pursuant to *California v. Trombetta*, 467 U.S. 479, 485 (1984), and *Arizona v.*

24  *Youngblood*, 488 U.S. 51, 58 (1988), the defense moved for dismissal of the charges based on the

25  state's alleged failure to preserve the red truck as evidence.  The trial court denied the motion,

26  finding that petitioner was not prejudiced by any failure to preserve evidence.  (Reporter's

1  Transcript ("RT") at 202-04.)  Petitioner claims the trial court's ruling violated his right to due

2  process.

3  Due process standards require that criminal defendants be afforded a meaningful

4  opportunity to present a complete defense, including "what might loosely be called the area of

5  constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S.

6  858, 867 (1982).  In *California v. Trombetta*, the United States Supreme Court held that the

7  government violates a defendant's right to due process if it destroys evidence that possessed

8  "exculpatory value that was apparent before the evidence was destroyed [that is] of such a nature

9  that the defendant would be unable to obtain comparable evidence by other reasonably available

10  means." *Trombetta*, 467 U.S. 479, 489 (1984).

11  In order to show a constitutional violation, a criminal defendant must demonstrate

12  that the police acted in bad faith in failing to preserve the potentially useful evidence.  *Arizona v.*

13  *Youngblood*, 488 U.S. 51, 58 (1988).  "The presence or absence of bad faith turns on the

14  government's knowledge of the apparent exculpatory value of the evidence at the time it was lost

15  or destroyed." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (citing *Youngblood*,

16  488 U.S. at 56-57).  The fact that evidence was "potentially exculpatory" is not a sufficient

17  showing of prejudice.  *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997) (*citing Youngblood*,

18  488 U.S. at 57).

19  Petitioner's allegations about the truck fail to demonstrate that he suffered a due

20  process violation based on the state's alleged loss or destruction of evidence or failure to preserve

21  evidence.  First, it does not appear that the truck held any exculpatory value.  As the state court

22  noted in its opinion on direct review, the relevant issue regarding the cracked windshield was not

23  whether it actually impaired petitioner's  vision, but rather, only whether the traffic stop officer

24  had a reasonable suspicion that the crack *might* have impaired his vision so as to support the

25  legality of the stop.  *People v. Santos*, 2008 WL 4175094, *supra*, at 6.

26  /////

7

1       Several witnesses testified to the existence of the crack at the time of the traffic

2   stop.  It was described by the traffic stop officer, whose testimony was found credible by the trial

3   court, as a long vertical crack down the middle of the windshield, approximately 18 to 20 inches

4   in length and one quarter of an inch thick, with several smaller cracks running horizontally from

5   the main crack.  (RT at 734-36.)  It was further described by the tow yard owner as a single crack

6   running from the top to the bottom of the window.  (Augmented RT at 57.)  As set forth

7   elsewhere, the traffic stop officer testified that, in his experience, cracks in a windshield can

8   reflect the light toward the driver and blind the driver.  (Augmented RT at 13.)

9       More evidence regarding the exact size and nature of the crack would not have

10  negated the officer's credible testimony that, based on his personal experience, he had reasonable

11  suspicion that petitioner's vision could have been impaired by the crack.  In light of all the

12  witness testimony, it does not appear that the truck had apparent exculpatory value.

13      Moreover, petitioner fails to show that the police acted in bad faith in failing to

14  preserve the evidence.  The prosecutor represented to the trial court that the sale of the vehicle

15  had occurred without proper notice being given by the tow truck company and that the sheriff's

16  office had "no control over that mechanism."  (RT at 200.)  Defense counsel maintained to the

17  contrary that, because the vehicle disappeared, the officer must have had bad faith in having the

18  vehicle towed.  (RT at 197, 202.)  When pressed by the court, however, counsel failed to present

19  any specific facts to support a bad faith determination.  (RT at 197; *see also* RT at 209 (...I think

20  I've already expressed to the Court.  I don't have any cold, hard facts of bad faith.")  Petitioner

21  likewise fails to present any such evidence here.  To the contrary, the evidence indicates that

22  neither the police nor the prosecution believed the truck to have any exculpatory value.  *See*

23  *Cunningham v. Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (holding that bad faith is not

24  established when the exculpatory value of unpreserved evidence is entirely speculative; rather, to

25  prove a violation there must exist "specific, nonconclusory facts" demonstrating "a conscious

26  effort to suppress exculpatory evidence").

1          Under the circumstances of this case, the state court's rejection of petitioner's

2   claim that the police or prosecution failed to preserve exculpatory evidence was not contrary to,

3   or an unreasonable application of the rules of *Trombetta* or *Youngblood*.

4          C.         Ground Four: Jury Unanimity

5          For his final ground, petitioner claims that the trial court violated his federal due

6   process rights when it instructed the jury that unanimity as to the theory of conspiracy was not

7   required.  The California Court of Appeal rejected this claim citing California Supreme Court

8   precedent clearly holding that "the jury need not agree on a specific overt act as long as it

9   unanimously finds beyond a reasonable doubt that some conspirator committed an overt act in

10  furtherance of the conspiracy." *People v. Santos*, *supra*, at 6 (citing *People v. Russo*, 25 Cal.4th

11  1124 (2001)).  The state court's decision in this regard was consistent with clearly established

12  United States Supreme Court precedent.

13         The Fourteenth Amendment does not require a unanimous jury in state criminal

14  trials. *Williams v. Florida*, 399 U.S. 78, 86 (1970); *Apodaca v. Oregon*, 406 U.S. 404, 410-413

15  (1972).  Thus, in a general sense, criminal defendants in state court have no federal constitutional

16  right to a unanimous jury verdict.  *See Apodaca* , 406 U.S. at 410-12.

17         Moreover, the Supreme Court has explicitly held that the Constitution does not

18  require unanimous agreement of the jury as to the particular theory or act upon which a

19  defendant's guilt is based.  *See Schad v. Arizona*, 501 U.S. 624, 631-32 (1991).  When a single

20  crime can be committed by various means, the jury need not unanimously agree on which means

21  were used so long as they agree that the crime was committed.  *Id.* at 631-32; *see also Id.* at 649

22  (Scalia, J., concurring in judgment) ("it has long been the general rule that when a single crime

23  can be committed in various ways, jurors need not agree upon the mode of commission"); *see*

24  *also Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999) (noting that the Supreme Court has

25  not "explicated a constitutional requirement that state-court juries must agree to a single act that

26  satisfies the overt act element of the relevant crime).  Petitioner is not entitled to relief.

VI.  CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 28, 2011

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE